

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-2008

# Massaquoi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2417

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Massaquoi v. Atty Gen USA" (2008). *2008 Decisions.* Paper 205.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/205

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT-PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 07-2417

————

TAI MASSAQUOI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES.

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A97-669-440)
Immigration Judge: Honorable Robert P. Owens

————
_____

Argued October 21, 2008

Before: SMITH, COWEN, *Circuit Judges*, and THOMPSON, *District Judge*[*]

(Filed: November 20, 2008)

Benjamin D. Yerger (Argued)
126 East Chestnut Street
Lancaster, PA  17602
    *Counsel for Petitioner*

_____

[*] The Honorable Anne E. Thompson, Senior United States District Judge for the District Court of New Jersey, sitting by designation.

1

Edward J. Duffy
Jeffrey L. Menkin (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
    *Counsel for Respondent*

_____

OPINION

_____


Thompson, *District Judge*.

Tai Massaquoi, a native and citizen of Liberia, petitions to review a decision from the Board of Immigration Appeals ("BIA") ordering his removal to Liberia. The BIA, in so doing, reversed a ruling of the Immigration Judge ("IJ") to grant Massaquoi asylum. Massaquoi contends that if he is removed, he will be persecuted due to his mental illness. The Government argues Massaquoi has not sufficiently established his grounds for asylum. This Court has jurisdiction pursuant to 8 U.S.C. § 1252. For the reasons stated below, we will deny the Petition for Review.

Massaquoi, 28, entered the United States on July 29, 1983. At entry, he was three years-old. He was admitted on a visitor's visa and never left. In 1997, Massaquoi was in a car accident which left him with permanent brain damage, and subsequently doctors diagnosed him with mental illness. His symptoms include auditory and visual hallucinations, disorganized thought process, lack of concentration, and bizarre behavior.

2

In June 2004, Massaquoi was convicted of indecent assault. Six weeks later, he was convicted of theft, receiving stolen property and retail theft.

In May 2006, the Government charged Massaquoi with removability on account of his overstaying his visa and his crimes of moral turpitude, pursuant to his 2004 convictions. Massaquoi conceded removability, and, with the assistance of counsel, sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Massaquoi originally based his claims for relief on his membership in a particular social group–the severely and obviously mentally ill–as well as his religion. But, after speaking with counsel, Massaquoi narrowed his claim to his membership in a particular social group–namely, the mentally ill.

In May 2006, IJ Robert P. Owens heard testimony from Massaquoi and an expert witness, Dr. Emmanuel Dolo. Dr. Dolo testified about the scarcity of mental health care in Liberia as well as public perceptions associated with the mentally ill, and the conditions awaiting Massaquoi in Liberia, should Massaquoi return. Citing Massaquoi's condition, Dr. Dolo testified that Massaquoi would have difficulty proceeding through the airport. Dr. Dolo testified that Massaquoi would have his clothes and money taken and that he would act out if his medical illness were to go untreated. Dolo stated he believed Massaquoi would face persecution from Liberians who would misconstrue his behavior as intentional or associated with witchcraft and would shun, stone or beat Massaquoi.

The IJ found Massaquoi and Dr. Dolo credible but ultimately denied Massaquoi's

application for asylum and withholding of removal. The IJ concluded that Massaquoi had not established it was more likely than not that each of Dr. Dolo's predictions would come true, citing *In re J-F-F-*, 23 I&N Dec. 912 (A.G. 2006). Applying *In re J-F-F-*, the IJ denied withholding. The IJ also denied CAT relief, reasoning that although there is only one certified psychiatrist in Liberia and no mental health clinics or other care for the mentally ill, Liberia's inability to provide mental health care because of limited resources does not constitute torture. Massaquoi appealed to the BIA.

The BIA held that the IJ had applied the wrong burden of proof in deciding Massaquoi's asylum claim and adjudicating whether persecution was too speculative under *In re J-F-F-*. The BIA indicated that the correct standard in deciding Massaquoi's claim was not whether it was more likely than not that Massaquoi would face persecution, but rather if Massaquoi had a well-founded fear of persecution if he were removed to Liberia. The BIA remanded the matter back to the IJ.

On remand, Massaquoi's claim was heard once again by IJ Owens. He determined Dr. Dolo's predictions "could constitute persecution" and, accordingly, that Massaquoi would suffer persecution on account of his mental illness. IJ Owens highlighted the stigma or taboo of mental illness in Liberia because of its association with witchcraft; he also noted the lack of mental health care available in Liberia and Massaquoi's lack of family there. Accordingly, the IJ concluded Massaquoi had presented a well-founded fear of persecution and granted asylum, but did not rule on Massaquoi's claims regarding

4

withholding of removal or his claims under CAT. The Government appealed to the BIA.

On appeal, the BIA reversed the IJ once more, concluding Massaquoi had not submitted any evidence that the government of Liberia had a policy of state action against the mentally ill. The BIA concluded that the potential for persecution based on Dr. Dolo's predictions was too speculative to establish a well-founded fear of persecution. The BIA vacated the IJ's grant of asylum, determined Massaquoi had failed to meet the standards for withholding of removal and CAT relief, and ordered Massaquoi removed to Liberia. Massaquoi now petitions this Court for review.

To qualify as a "refugee" who may receive asylum, an alien must establish that he is unable or unwilling to return to his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (citation omitted). The persecution alleged must be at the hands of "the government or forces the government is either unable or unwilling to control." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d. Cir. 2002) (citation omitted).

The BIA and this Court have interpreted "persecution" to include conduct or conditions "so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Thus, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.* at 1240. The petitioner has to do more than merely string together a collection of suppositions. *In*

5

*re J-F-F-*, 23 I&N Dec. 912 (A.G. 2006).

Here, Massaquoi contends that because he suffers from mental illness, he is a member of a group that warrants protection. He next alleges that his removal to Liberia would subject him to harm on account of this illness. To support his claim, Massaquoi relies heavily on the testimony of Dr. Dolo. Dr. Dolo opined that if Massaquoi were removed to Liberia, upon arrival at the airport, he would likely have difficulty moving through the country. Dr. Dolo further stated Massaquoi would have his clothes and money taken and would likely be persecuted because native Liberians would misconstrue his mental illness for witchcraft. Finally, the lack of adequate mental health treatment centers would provide no assistance in rehabilitating Massaquoi.

Applying *In re J-F-F-* to the instant matter, this Court concludes Massaquoi has not established his claim for asylum with the specificity and certainty required of him. Massaquoi has merely offered Dr. Dolo, whose testimony as to the harm awaiting Massaquoi at the airport in Liberia is tenuous, speculative and uncorroborated. Neither Massaquoi nor Dr. Dolo have presented any solid evidence that would substantiate the claims of future persecution, allowing a reasonable factfinder to conclude that Massaquoi had a well-founded fear of persecution.

Moreover, Massaquoi has not presented any evidence that suggests authorities in Liberia are unable or unwilling to control any harm that may befall Massaquoi, as articulated in *Gao. Gao*, 299 F.3d at 272. Massaquoi presented no evidence that Liberia

has a policy of state action directed against the mentally ill. Rather, he relies on the possible fear of future harm at the hands of private actors, not under the control of the government, as the basis of his asylum application.

For Massaquoi to be successful in his claim, he must meet the showing outlined in *In re J-F-F-,* and establish that his fear of persecution was well-founded. The evidence in this record does not support Massaquoi's assertion that he has satisfied this requirement. Accordingly, we will deny the Petition for Review.